```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOELY ZETTLEMOYER,
o/b/o P.M.R.,

                        Plaintiff,
                                                    DECISION AND ORDER

                                                    11-CV-6572L

            v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,


                        Defendant.
_____
```

Plaintiff Joely Zettlemoyer, on behalf of her minor daughter, P.M.R., appeals from a denial of supplemental security income benefits ("SSI") by the Commissioner of Social Security ("the Commissioner"). The action is one brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner.

On September 25, 2009, plaintiff protectively filed an application on behalf of P.M.R. for SSI under Title II of the Social Security Act. Plaintiff alleged that P.M.R. had been disabled since February 6, 2006 (later amended to September 25, 2009) due to juvenile diabetes. (T. 85-87). Her application was initially denied, and plaintiff requested a hearing, which was held on February 3, 2011 before Administrative Law Judge ("ALJ") Michael W. Devlin. (T. 22-33). The ALJ issued a decision on March 4, 2011, concluding that P.M.R. was not disabled under the Social Security Act. (T. 7-21). That decision became the final decision of the Commissioner when the Appeals Council denied review on September 23, 2011 (T. 1-4). Plaintiff now appeals.

The Commissioner has moved (Dkt. #8) and plaintiff has cross moved (Dkt. #11) for judgment on the pleadings pursuant to Fed. R. Civ. Proc. 12(c). For the reasons that follow, I find that the Commissioner failed to properly apply the correct legal standards, and that substantial evidence of record establishes that P.M.R. is disabled. The Commissioner's motion (Dkt. #8) is denied, plaintiff's cross motion (Dkt. #11) is granted, and the matter is remanded for the calculation of benefits.

DISCUSSION

Because the claimant is a child, a particularized, three-step sequential analysis is used to determine whether she is disabled. First, the ALJ must determine whether the child is engaged in substantial gainful activity. *See* 20 CFR §416.924. If so, the claimant is not disabled. If not, the ALJ proceeds to step two, and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act. If not, the analysis concludes with a finding of "not disabled." If so, the ALJ continues to step three.

At step three, the ALJ examines whether the claimant's impairment meets or equals the criteria of a listed impairment. If the impairment meets or medically equals the criteria of a listing and meets the durational requirement (20 CFR §416.926) -- that is, if the child's impairments are functionally equivalent in severity to those contained in a listed impairment -- the claimant is disabled. *See* 20 CFR §416.926(a). If not, she is not disabled. In making this assessment, the ALJ must measure the child's limitations in six areas: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for herself; and (6) health and physical well-being. *See* 20 CFR §416.926a(b)(1). Medically determinable impairments will be found to equal a listed impairment where they result in "marked" limitations in *two or more* domains of functioning, or an "extreme" limitation in one or more. 20 CFR §§ 416.926a(a), (d) (emphasis added).

The Commissioner's decision that P.M.R. is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir.2002). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). "The Court carefully considers the whole record, examining evidence from both sides 'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" *Tejada v. Apfel,* 167 F.3d 770, 774 (2d Cir. 1998) *quoting Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir.1997). Still, "it is not the function of a reviewing court to decide de novo whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute our judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir.2002).

Upon careful review of the record, I believe that the ALJ failed to sufficiently consider or properly apply the evidence concerning whether P.M.R. meets or equals the requirements of Listing 109.08(B).

The ALJ first concluded that P.M.R.'s juvenile diabetes constituted a severe impairment not meeting or equaling a listed impairment – specifically, he found that P.M.R. does not satisfy the requirements of Listing 109.08 regarding juvenile diabetes requiring insulin injections, because "[a]lthough there is evidence of recurrent blood glucose levels below 70 in the records of the school nurse . . . the frequency of these episodes do [sic] not appear to satisfy the requirements of this listing." (T. 13). He then proceeded to analyze whether P.M.R. has "marked" or "extreme" limitations in any of the six domains of functioning, based on the medical, educational and testimonial evidence presented, and concluded that she did not, and was therefore not disabled.

Listing 109.08 reads, in relevant part:

> Juvenile diabetes mellitus . . . requiring [injected] insulin. And one of the following, despite prescribed therapy . . .
>
> B. Recent, recurrent episodes of hypoglycemia . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1.[1]

Plaintiff argues that the ALJ's conclusory finding that P.M.R.'s episodes of hypoglycemia did not meet the "recent, recurrent" requirement of the listing was in error. I agree.

There is ample evidence in the record that despite constant monitoring and daily treatment, including multiple blood tests and insulin injections every day, P.M.R. suffers from poor blood sugar control and recurrent hypoglycemic episodes, which occurred throughout the period under review, up to the night before her hearing. In fact, P.M.R.'s blood sugar tested at hypoglycemic (under 70 mg/dL) and even dangerous levels (below 50 mg/dL) on a frequent, ongoing basis. P.M.R.'s treatment records reflect that as early as March 31, 2009 and continuing to and beyond September 25, 2009, the alleged date of onset, P.M.R.'s mother reported difficulty in managing P.M.R.'s diabetes, with frequent hypoglycemic episodes, especially prior to meals. (T. 279-281).

Throughout the 2009-2010 and 2010-2011 school years, P.M.R.'s school nurse kept daily records of P.M.R.'s blood sugars, which were carefully monitored per P.M.R.'s Section 504 Accommodation Plan in an effort to avoid hypoglycemic and hyperglycemic episodes. (T. 148-149). She also provided P.M.R. with insulin injections and/or snacks, as needed, to manage her blood sugars, and communicated with P.M.R.'s mother concerning her care 3-4 times per week. The nurse's records reflect significant episodes of hypoglycemia. P.M.R.'s records show blood sugars

---

[1] I observe that Congressional guidance concerning the criteria for evaluating claims of disability under Listing 109.08 has since been revised, and the listing now applies only to children under the age of 6. Because the revisions did not take effect until June 7, 2011, the Court will apply the listing as it was interpreted at the time plaintiff's application for benefits was decided. *See* 76 FR 19692 (2011); *Lowry v. Astrue*, 2012 U.S. App. LEXIS 6933 at *7 n.2 (where regulations governing the ALJ's evaluation of a claim are amended after the ALJ's decision, the court will "apply and reference the version . . . in effect when the ALJ adjudicated [the claimant's] disability claim") (unpublished decision); *Bialek v. Astrue*, 2013 U.S. Dist. LEXIS 11143 at *5 n.2 (E.D.N.Y. 2013) (same).

below 70 – in some cases as low as 43 – on nearly 70 different occasions. In short, P.M.R. experienced and was treated for hypoglycemia 25-30% of the days she attended school. (T. 159-215). According to the school nurse and P.M.R.'s classroom teacher, low blood sugars detracted from P.M.R.'s ability to perform academically, since low blood sugars caused P.M.R. to experience distracting symptoms including headaches, shakiness, weakness, and blurred vision, which would not abate until P.M.R. was treated and her blood sugars returned to the normal range. (T. 108). According to P.M.R.'s mother, P.M.R. also experienced hypoglycemic episodes at nighttime, 1-3 times per month (Tr. 217), and in fact had a blood sugar as low as 45 the evening before the hearing. (T. 27). She estimated that P.M.R.'s diabetic symptoms and medical appointments cause her to miss approximately twelve days of school each year. (T. 31).

The school records and hearing testimony by P.M.R.'s mother are consistent with P.M.R.'s treatment records for the same period, which reflect consistent reports of difficulty with hypoglycemia. P.M.R.'s treating nurse practitioner, Susan Bates, with whom P.M.R. treated every three months, consistently describes her blood sugar management as "poor" or "deteriorating," based on the results of objective testing in the form of the HbA1c blood test, which reflects blood sugar control over the preceding 3 months, as corroborated by complaints of poor control by P.M.R. and her mother. (T. 272, 274, 277, 280, 291, 294, 353, 356).

Because the ALJ rejected P.M.R.'s hypoglycemic episodes as insufficiently recurrent "out of hand," it is unclear whether he fully reviewed or appreciated the extent of the evidence concerning P.M.R.'s low blood sugars, which are consistently reflected in the records of her school nurse, testimonial evidence from P.M.R.'s mother, medical records and objective medical testing performed by P.M.R.'s treating nurse practitioner. However, to the extent that the ALJ might have believed that P.M.R.'s hypoglycemia was not sufficiently recurrent because she had experienced a single "honeymoon" period in which her blood sugars appeared more stable for a few months (e.g., T. 283, 286, 294), this temporary period of improvement occurred prior to the claimed onset date, and appears to be more reflective of extraordinary efforts by P.M.R.'s mother and the school nurse, than

of any generalized stability in P.M.R.'s condition. *See e.g.,* T. 286 ("HbA1c demonstrates a nice decrease indicating improvement in BG control. Mom was recognized for this accomplishment."). Indeed, the record reflects that P.M.R.'s blood sugar control began to deteriorate in May 2007 and did not improve significantly at any point thereafter. Medical treatment records after that time reflect "consistently inconsistent" blood sugars, and note that P.M.R.'s mother stated she felt overwhelmed with P.M.R.'s care, and was unable to seek employment because no after school program was willing or able to care for P.M.R. (T. 252, 280, 350).

In such circumstances, a single, temporary period of control of juvenile diabetes – particularly one that appears to have ended prior to the claimed period of onset – does not indicate that a child's blood sugar is well-controlled. *See Morales v. Barnhart*, 218 F. Supp. 2d 450, 461 (S.D.N.Y. 2002) (the Social Security Administration "does not seek to punish caretakers for ameliorating a child's impairment": thus, significant, intermittent control of juvenile diabetes, particularly where it results from the vigilance of claimant's mother, who lost her job because of the time that was required to manage claimant's care, does not indicate that clamant's condition is not disabling).

I find that substantial evidence of record overwhelmingly demonstrates that P.M.R.'s episodes of hypoglycemia, occurring 25-30% of the days she attended school throughout the period at issue and continuing through the date of her hearing, are sufficiently "recent [and] recurrent" to meet the requirements of Listing 109.08(B), and that the ALJ's conclusions to the contrary are not supported by substantial evidence and/or are based on errors of law. *See generally Morales*, 218 F. Supp. 2d 450 at 460-461 (remanding case for calculation and payment of benefits and finding that where claimant's blood sugars were erratic, with several highs and lows, the ALJ erred in determining that claimant's impairments did not satisfy Listing 109.08(B)).

CONCLUSION

For the foregoing reasons, I find that the ALJ committed legal error, and that substantial evidence in the record establishes that the claimant is disabled and entitled to benefits. As such, remand for further proceedings would serve no purpose. The Commissioner's motion for judgment on the pleadings (Dkt. #8) is denied, plaintiff's cross motion (Dkt. #11) is granted, and the matter is remanded solely for the calculation and payment of benefits.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
May 9, 2013.